REBECCA M. F. QUACKENBUSH, Plaintiff, v. MARIE O'HARE and Others, Defendants.

*Foreclosure — surplus money — rule that property be sold in the inverse order of its alienation not applicable in proceedings therefor — marshalling of the assets.*

The equitable principle requiring a sale of property to be made in the inverse order of alienation cannot be invoked in a proceeding to reach a surplus arising on the foreclosure of a mortgage.

Upon an application for the direction of the court in regard to certain surplus moneys arising under a mortgage foreclosure, it appeared that the mortgage under which a party to such proceeding was entitled to said surplus also covered other pieces of property:

*Held,* that the person holding subsequent mortgage liens upon the premises, upon the sale of which the surplus had arisen, could not compel the prior lienor to satisfy his mortgage, in the first instance, out of the last property conveyed by the mortgagor, being other property than that sold under the foreclosure.

In such a proceeding the owners of the pieces of property, other than that foreclosed, are not before the court, and the court has no power to marshal the assets.

APPEAL by the claimants, Washburn & Barnes, from an order, entered in the office of the clerk of the city and county of New York, and dated on the 14th day of August, 1891, directing the distribution of the surplus moneys herein.

The above-entitled action was brought for the foreclosure of a mortgage upon the sale under which a surplus arose. In proceedings to obtain the direction of the court in regard to the proper

disposition of this surplus a referee was appointed, who found the following facts :

I. That S. T. Cannon is the holder of the legal title to a mortgage on the property sold in foreclosure in this proceeding for two thousand dollars ($2,000), dated July 9, 1885, and recorded on July 22, 1885, in the office of the register of the city and county of New York.

II. The claimants Washburn & Barnes held a mortgage on the premises sold in foreclosure herein for $3,230.67, which said mortgage is dated January 28, 1887, and was recorded on February 11, 1887, in the office of the register of the city and county of New York.

III. There are no liens upon the surplus moneys in this proceeding, except the above-mentioned mortgages, held, respectively, by S. T. Cannon and Washburn & Barnes, and the mortgage of S. T. Cannon is a prior lien in point of time.

IV. That on the 11th day of November, 1886, the defendant, Marie O'Hare, made, executed and delivered to the Murray Hill Bank a mortgage to secure the sum of twenty-five hundred dollars ($2,500), and covering the following described property : All that certain lot of land, with the buildings thereon, erected, situate, lying and being on the southerly side of Seventy-fourth street, in the city of New York, distant sixty feet westerly from the south-westerly corner of First avenue (1st) and said Seventy-fourth street; running thence southerly fifty-one feet; thence running westerly and parallel with Seventy-fourth street twenty feet; thence running northerly and parallel with First avenue fifty-one feet, and thence running easterly and again parallel with Seventy-fourth street twenty (20) feet to the point or place of beginning, be the said several dimensions more or less.

V. That the said mortgage is now held by the Murray Hill Bank, and was given in express terms, subject to a first mortgage only of twenty-five hundred dollars ($2,500).

VI. That the mortgage held by S. T. Cannon covers three separate parcels of property, one parcel of which is the property covered by the Murray Hill Bank mortgage, another parcel was on Third street, and another parcel was on the property foreclosed in this action.

VII. The surplus moneys in this action, amounting to $2,751.50, arose from the sale of a lot of land on west side of Second avenue,

in the city of New York, fifty feet five inches north of One Hundred and Tenth street, twenty-five feet two and a half inches wide, and 100 feet deep, upon foreclosure of a mortgage thereon for $1,000 made by Marie O'Hare to Elizabeth Hillenbrand, and assigned to plaintiff, dated February 23, 1884, and recorded February 29, 1884, in Liber 1818 of Mortgages, page 113, being a purchase-money mortgage.

VIII. On July 9, 1885, Marie O'Hare gave her bond to Lambert Suydam dated that day for $2,000, payable on July 9, 1886, with interest, and also said Marie O'Hare and James O'Hare, her husband, made a mortgage to said Lambert Suydam to secure said bond dated same day, and recorded July 22, 1885, in Liber 1966 of Mortgages, page 73, whereby they mortgaged three parcels of land, to wit: Said Second avenue lot, a house and lot in West Third street, New York city, on south side of said street, fifty feet west of Macdougal street, twenty-five feet wide and 100 feet deep; and a house and lot on south side of Seventy-fourth street, sixty feet west of First avenue, in said city, twenty feet wide and fifty-one feet two inches deep, all belonging to said Marie O'Hare.

IX. By assignment dated January 2, 1886, recorded January 5, 1886, in Liber 1958 of Mortgages, page 469, Lambert Suydam assigned the bond and mortgage for $2,000 aforesaid to James Suydam, who held same till June 14, 1887.

X. During the year 1886, and the beginning of 1887, Marie O'Hare owned a parcel of land at north-east corner of Ninety-fifth street and Third avenue, New York city, and was engaged in erecting ten houses thereon, her husband, James O'Hare, acting as her superintendent and agent in such erection.

XI. Abraham Steers furnished to said erection during such period a large amount of material, consisting of sash blinds, doors and trim, under contract with said Marie O'Hare.

XII. He received from her a mortgage on said Third avenue premises for $10,000, and credited her with such mortgage and such amount thereof on his account against her.

XIII. On January 28, 1887, said Marie O'Hare made her two promissory notes, each dated that day, each made to order of Washburn & Barnes, one payable in three months for $1,600, with interest, and the other payable in four months for $1,630.67, with

interest, which notes were made to secure payment for brick to the aggregate of such amounts furnished by said Washburn & Barnes to said Marie O'Hare for and used in said erection at Third avenue and Ninety-fifth street.

XIV. The defendants, George W. Washburn and William H. Barnes, at that time and ever since composed the firm of Washburn & Barnes, and have ever since been the owners and holders of said notes, which are past due and payable, but no part of which has been paid.

XV. At the same time, said Marie L. O'Hare executed a mort-gage to said Washburn & Barnes, dated January 28, 1887, and acknowledged by said Marie L. O'Hare on same day, made to secure payment of said two notes and mortgaging said Second avenue lot, the premises from which the surplus moneys herein arose.

XVI. Such notes and mortgages were delivered to said Washburn & Barnes on January 30, 1887.

XVII. Thereafter, and on February 2, 1887, said Marie O'Hare executed and delivered to said Abraham Steers her full covenant warranty deed, conveying to him the house and lot of land in West Third street, hereinbefore described, and which deed conveyed (as was therein stated), subject, however, to all mortgages, interest, taxes and assessments then outstanding and unpaid, and which were a lien on said premises.

XVIII. At the same time, said Abraham Steers and Marie O'Hare signed and sealed an agreement, in writing, dated February 2, 1887, which recited said deed, and that James O'Hare was indebted to Steers in $11,729.50, and that such indebtedness might, within the next twelve months, be either increased or diminished, and then provided that said Steers would, at any time within the period of twelve months from such date, February 2, 1887, upon the payment to him of such indebtedness of $11,729.50, or so much thereof as might be due at the time of such payment, or if a greater amount than said sum should be due, then, of the amount so due, execute and deliver to said Marie O'Hare, or to her nominee or nominees, a deed of said premises in West Third street.

XIX. Such period of twelve months has long since elapsed, and said Steers has not made any deed of said premises to said Marie O'Hare or any other person.

XX. That said property was subject to a first mortgage of $18,000, to a second mortgage of $5,000, and to the said mortgage of $2,000 made to Suydam, hereinbefore mentioned.

XXI. The indebtedness referred to in said agreement between Steers and Marie O'Hare, as an indebtedness of James O'Hare, was, in fact, the account in favor of Steers against Marie O'Hare for materials furnished to said Third avenue and Ninety-fifth street houses.

XXII. No part of such amount was paid to said Steers by said Marie O'Hare within said period of twelve months or thereafter; and said Marie O'Hare never requested a reconveyance of said Third street property to her, nor did any nominee of her request any such conveyance, nor did she, nor any nominee of her, make any payment as provided for in the agreement of February 2, 1887.

XXIII. Ever since February 2, 1887, said Steers has held and possessed said West Third street property and still continues so to do.

XXIV. In the month of June, 1887, said Steers requested defendant, Sylvanus T. Cannon, to pay the mortgage for $2,000, made by Marie O'Hare to Lambert Suydam and assigned to James Suydam, covering said premises in West Third street (and also covering the lot in Seventy-fourth street and the premises on Second avenue, from which the surplus herein arose).

XXV. At such time said Steers asked said Cannon, as one of the firm of Paddock & Cannon, who were Steers' attorneys, to take up and hold such $2,000 mortgage, and he then offering and agreeing to reimburse Paddock & Cannon for the money they should pay in doing so.

XXVI. Pursuant to such requests of Steers, said Cannon, using the money of Paddock & Cannon, paid said mortgage of $2,000 and interest, fifty-five dollars, to said James Suydam, who thereupon delivered to said Cannon an assignment of said mortgage of $2,000, dated June 14, 1887, and acknowledged that day, recorded June 16, 1887, in Liber 2192 of Mortgages, page 264.

XXVII. As he had agreed, Mr. Steers, a short time thereafter, reimbursed and repaid Paddock & Cannon, his attorneys, the money they had paid to said Suydam upon said mortgage of $2,000 at the time of the delivery of such assignment to Mr. Cannon aforesaid.

XXVIII. Mr. Cannon has continued holding such assignment of mortgage for and in behalf of Mr. Steers and so holds the same.

XXIX. The only claimants to the surplus moneys herein are Sylvanus T. Cannon, who claims same to the extent of said mortgage of $2,000 and interest, and Washburn & Barnes, who claim same under their mortgage made to them, above mentioned.

XXX. Under the mortgage to Washburn & Barnes, made as above mentioned, there is due, owing and unpaid, $3,230.67 and interest from January 28, 1887.

The referee found, as conclusions of law :

I. That S. T. Cannon has the first lien upon the surplus moneys herein, which said lien is prior to the lien of Washburn & Barnes, for the amount due upon the mortgage of $2,000 held by him, being for the said sum of $2,000, with interest thereon from the 1st day of January, 1887, amounting in all to the sum of $2,540.

II. That Washburn & Barnes have the next lien upon the said surplus moneys for the amount of the mortgage held by them and the interest due thereon.

*Early & Prendergast*, for the claimants, Washburn & Barnes, appellants.

*Henry G. Atwater*, for the claimant Cannon, respondent.

*Moses Weyman*, for the Murray Hill Bank.

INGRAHAM, J. :

The equitable principle that where several pieces of property are covered by a mortgage to secure the payment of a sum of money and the owner of the equity of redemption has conveyed the several pieces of property to different grantees, in an action to foreclose the mortgage the court will order the property sold in the inverse order of the alienation, so that the property last conveyed shall be first sold to pay the amount due, to secure which the mortgage was given, is not applicable to this case.

No application is made in this action to sell any portion of the mortgaged premises. By the conveyance or mortgaging of the separate parcels of property by the mortgagor the lien of the respondent's mortgage was not affected ; it still remained a lien upon all of the several pieces of property mortgaged and the surplus money in this proceeding, being the proceeds of a piece of property upon

which the respondent's mortgage was a lien, the respondent was entitled to have such surplus applied to the payment of his mortgage.

The owners of the parcels of property covered by the respondent's mortgage, other than the parcel foreclosed in this case, are not parties to this action and the court has no jurisdiction over them. It cannot make a decree directing a sale of the property, and the effect of sustaining the contention of the appellant would be to destroy the respondent's lien upon a portion of property upon which he had such a lien by the execution of the mortgage. The court having no power in this proceeding to marshal the assets so as to apply the rule above stated, the rule cannot be applied at all. Whether or not the appellants Washburn & Barnes would be entitled to be subrogated to the rights of the respondent to enforce the mortgage against the West Third street property is not presented on this appeal, and need not, therefore, be discussed.

When Steers took a conveyance of the West Third street property, he had no notice that the property foreclosed in this suit had been conveyed or that a mortgage to the appellant had been given, and as that mortgage was not recorded he had no constructive notice of it, so that he had the right to assume that the piece of property foreclosed in this action would, if the rule contended for by the appellant was applicable, be primarily liable for the payment of this mortgage, and the subsequent purchase of the mortgage under which the respondent claims transferred to the respondent the right of the original mortgagee to obtain the payment of his mortgage from the proceeds of any of the property upon which it was a lien.

It is clear that the mortgage was not merged by its transfer to the respondent, for transferring the mortgage instead of satisfying it, or taking an assignment to himself, was a clear intimation by Steers that it was not the intention that the mortgage should merge, even assuming that Steers, by payment of the mortgage, or the amount paid by the respondent for it, becomes its equitable owner. It is not claimed that Steers has realized anything out of the parcel of property conveyed to him, and the defeasance executed by Steers shows that such conveyance was simply a mortgage, and that by it he acquired only a lien upon the property to secure the amount of the mortgagor's indebtedness to him.

It does not appear from the record that any motion was made in the court below to bring other parties in, so that the questions raised by the appellant could be determined, and to award this surplus money to the appellant would be, in effect, to hold that the appellant's lien was prior to that of the respondent, when, in fact, the respondent's lien was prior to the appellant's.

The respondent was the real party in interest, as he was the owner of the mortgage, and it was to him that the money must be paid. The fact that, as between himself and some other person, such other person might be equitably entitled to a transfer of the mortgage, does not make such other person the real party in interest. It is the real owner of the obligation that is entitled to enforce it.

I think, therefore, the order was right and should be affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Order affirmed, with ten dollars costs and disbursements.